IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARY C. WILSON                                                                                      PLAINTIFF

v.                                        1:13CV00122-DPM-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                            DEFENDANT

## RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition was prepared for United States District Judge D. P. Marshall Jr. A party to this dispute may object to this recommendation in writing. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the Clerk of the Court no later than fourteen days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing the record evidence. An objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for that purpose, must address the following matters as part of written objections: (1) why the record before the magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing. Based on this submission, Judge Marshall will determine the need for a hearing.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

1

**Reasoning for Recommended Disposition**

Mary Wilson seeks judicial review of the denial of her second application for disability benefits.[3] Ms. Wilson first applied for disability benefits in 2008 at age forty-two, shortly after being diagnosed with carpal tunnel syndrome.[4] At that time, Ms. Wilson worked at a poultry processing plant. According to Ms. Wilson, she was terminated while on medical leave.[5] Ms. Wilson based her claim primarily on carpal tunnel syndrome.

The first application was denied. Ms. Wilson reapplied, continuing to rely on carpal tunnel syndrome. Fourteen months later, Ms. Wilson was diagnosed with vulva cancer; the cancer was surgically removed. Because the first application was denied on August 10, 2010, this case considers whether Ms. Wilson was disabled beginning August 11, 2010.[6]

**The Commissioner's decision**. After considering the second application, the Administrative Law Judge determined Ms. Wilson has severe impairments – carpal tunnel syndrome in both wrists, hypertension, osteoarthritis, and vulvar cancer status post vulvectomy and lymphadenectomies[7] – but she can do some medium work, to include her past work as a cashier and a certified nursing assistant (CNA).[8] Because a person who can do her past work is not disabled,[9] the ALJ denied the

---

[3] SSA record at pp. 165 & 172.

[4] *Id*. at p. 83 (discussing circumstances of first application).

[5] *Id*. at pp. 36-37.

[6] *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

[7] SSA record at p. 16.

[8] *Id*. at pp. 17 & 22.

[9] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("If you can still do your past relevant work, we will find that you are not disabled.").

application.[10]

After the Appeals Council denied a request for review,[11] the ALJ's decision became a final decision for judicial review.[12] Ms. Wilson filed this case to challenge the decision.[13] In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14]

**Ms. Wilson's arguments**. Ms. Wilson maintains her wrists are significantly limited and painful due to carpal tunnel syndrome. She contends the ALJ should have considered listing 1.02B (major dysfunction of a joint); she claims chronic pain in her wrists has prevented her from working since 2008. She says that in evaluating her credibility, the ALJ relied on her lack of medical treatment for her wrists, without considering her lack of medical insurance or financial resources. She claims her recent cancer surgery and impending chemotherapy prevent her from working. For these reasons, she maintains substantial evidence does not support the ALJ's decision.[15]

**Applicable legal principles**. For substantial evidence to support the decision, a reasonable

---

[10]SSA record at p. 22.

[11]*Id*. at p. 5.

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 1.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]Docket entry # 9.

3

mind must accept the evidence as adequate to show Ms. Wilson can do some medium work, to include her former jobs as a cashier and a CNA.[16] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."[17] The ALJ reduced medium work – because of carpal tunnel syndrome – by eliminating work requiring the rapid use of the wrists.  The question before the Court is whether a reasonable mind would find the evidence as adequate to show Ms. Wilson could work within these parameters during the time period from August 11, 2010 – the day after the first application was denied – to October 24, 2012 – the date of the challenged decision.

**Carpal tunnel syndrome**.  From the outset, Ms. Wilson relied primarily on carpal tunnel syndrome as a basis for disability.[18]  Carpal tunnel syndrome can reduce a person's ability to work because, untreated, a person "may begin to experience muscle weakness, making it difficult to open jars and hold objects with the affected hand."[19]  The problem with Ms. Wilson's reliance on carpal tunnel syndrome is that the condition is treatable, often curable.[20]  According to the doctor who first diagnosed carpal tunnel syndrome, "A simple surgery could help or even cure the symptoms of her carpal tunnel."[21]  This prognosis indicates Ms. Wilson's symptoms can be controlled or eliminated

---

[16] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

[17] 20 C.F.R. §§ 404.1567(c) & 416.967©.

[18] SSA record at p. 73 (identifying carpal tunnel syndrome as primary reason for disability).

[19]  Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 866 (4th ed.).

[20] *Id*. at p. 867 ("Most people are able to control the symptoms of carpal tunnel syndrome with splinting and anti-inflammatory agents. For those who go on to require surgery, about 95% will have complete cessation of symptoms.").

[21] SSA record at p. 356.

4

by treatment. "An impairment which can be controlled by treatment…is not considered disabling."[22] Ms. Wilson conceded that point by testifying that she applied for disability benefits to obtain wrist surgery.[23]

Ms. Wilson wears braces which prevent the wrists from flexing inward to exacerbate her symptoms. The lack of further treatment is more consistent with mild carpal tunnel syndrome than disabling carpal tunnel syndrome. And the ALJ properly considered the lack of treatment in evaluating Ms. Wilson's credibility.[24]

To the extent Ms. Wilson relies on listing 1.02B, there are no "appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis" of the wrists or evidence of an "inability to perform fine and gross movements effectively" to implicate listing 1.02B.[25] The agency medical expert opined that Ms. Wilson can do medium work if she avoids rapid, repetitive use of the wrists.[26] A reasonable mind would accept the evidence as adequate to show carpal tunnel syndrome does not prevent medium work because wrist braces help alleviate Ms. Wilson's symptoms and because the ALJ limited rapid use of the wrists.

**Vulvar cancer**. Ms. Wilson's only other significant impairment is vulva cancer –

---

[22]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[23]SSA record at p. 70.

[24]*See, e.g., Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

[25]20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (setting forth requirements for meeting listing).

[26]SSA record at p. 372.

"abnormal, cancerous growth in the external female genitalia."[27] A biopsy confirmed the presence of a cancerous lesion in January 2012.[28] Early stages of vulvar cancer are treated by surgically removing the cancerous lesion and any affected inguinofemoral lymph nodes.[29] Depending on the progression of the disease, some patients undergo chemotherapy and/or radiation therapy to kill additional cancer cells.[30]

In March 2012, Ms. Wilson's oncologist removed the lesion and one lymph node.[31] The oncologist decided against chemotherapy because only one lymph node was affected.[32] However, a few months later, a new lesion appeared.[33] In June 2012, the oncologist removed the lesion and three lymph nodes.[34] Ms. Wilson testified that she would begin chemotherapy in August 2012. Although the record contains no treatment note about pending chemotherapy, Ms. Wilson's report is consistent with medical literature on the treatment of vulva cancer.

After the second surgery, the sensation in Ms. Wilson's left inner thigh was hyper-sensitive; she experienced pain to stimulus that does not ordinarily cause pain.[35] According to her neurologist, the hyper-sensitivity is a very common complication following vulvar surgery.[36] The neurologist

---

[27]Cindy L. A. Jones & Belinda Rowland, 6 The Gale Encyclopedia of Med. 4620 ( 4th ed.).

[28]SSA record at p. 833.

[29]Cindy L. A. Jones & Belinda Rowland, 6 The Gale Encyclopedia of Med. 4622 ( 4th ed.).

[30]*Id*. at p. 4623.

[31]SSA record at p. 705.

[32]*Id*. at p. 778.

[33]*Id.* at p. 910.

[34]*Id*. at pp. 876 & 888.

[35]*Id*. at p. 565.

[36]*Id*. at p. 566.

provided treatment options, but the record does not reflect the results.

Ms. Wilson contends the ALJ should have found her disabled because of her surgeries and planned chemotherapy, but the ALJ correctly observed that nothing suggests Ms. Wilson's condition can't be controlled if she follows treatment recommendations. The side effects of chemotherapy may prevent Ms. Wilson from working during the course of her treatment, but the record contains no evidence about chemotherapy; the only evidence is Ms. Wilson's report that she would begin chemotherapy.

The ALJ asked for recent treatment records,[37] but Ms. Wilson provided only the treatment notes for her first neurologist visit. As a result, the record does not contain the results of the second surgery or confirm that Ms. Wilson underwent chemotherapy. Without medical evidence of chemotherapy, the ALJ had no basis for considering how chemotherapy might affect Ms. Wilson's ability to work.

**Vocational evidence**. The ALJ asked a vocational expert whether a person with Ms. Wilson's impairments could do her past work.[38] The vocational expert testified that such a person could work as cashier or CNA, but not as a bartender or fast food worker due to the need for rapid, repetitive use of the wrists.[39] The vocational evidence shows Ms. Wilson could do her former work. A person who can still do her past work is not disabled under social security law.

### Recommended Disposition

Viewed as a whole, substantial evidence supports the ALJ's decision. The ALJ made no

---

[37]*Id*. at p. 78.

[38]SSA record at p. 76 (asking about work for a person who can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, but must avoid rapid, repetitive flexion and extension of both wrists).

[39]*Id*. at p. 77.

7

legal error. Accordingly, the Court recommends that the Commissioner's decision be affirmed and Ms. Wilson's Complaint (docket entry # 2) be dismissed with prejudice.

DATED this 20th day of August, 2014.

_____
JOE VOLPE
UNITED STATES MAGISTRATE JUDGE